2024 IL App (2d) 240143-U
No. 2-24-0143
Order filed May 15, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 24-CF-322 |
| | ) | |
| JUAN CAZAREZ-ZARAZUA, | ) ) | Honorable Keith A. Johnson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: In this pretrial detention case, we remand for the trial court to provide written findings explaining why less restrictive conditions would be insufficient to mitigate the threat the defendant's release would present.

¶ 2    The defendant, Juan Cazarez-Zarazua, appeals from the trial court's order granting the State's petition to deny him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of P.A.

101-652); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). We vacate and remand for additional proceedings.

¶ 3                                  I. BACKGROUND

¶ 4      In February 2024, the defendant was charged with one count of aggravated battery to a child under 13 years of age causing permanent disability (720 ILCS 5/12-3.05(b)(1) (West 2022)), a Class X felony, and one count of aggravated domestic battery (*id.* § 12-3.3(a)), a Class 2 felony. The State filed a petition to detain the defendant on the basis that he posed a threat to the safety of any person or persons or the community. 725 ILCS 5/110-6.1 (West 2022).

¶ 5      The trial court held a hearing on the State's petition. The State proffered a police synopsis that related as follows. On February 6, 2024, the Carpentersville police department received a report of suspected child abuse from Sherman Hospital. The nurse reported that the victim, I.R., born in October 2022, arrived at the hospital vomiting. The victim had bruises on his butt, chest, neck, face, back and petechial around the eyes. Further testing showed that the victim had two skull fractures, two broken ribs, a lacerated pancreas, subdural hematoma, and an extremely high liver enzyme count. One doctor at the hospital informed the reporting officer that the victim's injuries were consistent with blunt force trauma. The victim was transferred from Sherman Hospital to Lutheran General and then to Comer Hospital. Attempts to repair the victim's pancreas at Comer were unsuccessful. Doctors from all three hospitals agreed that the injury to the victim's pancreas occurred on February 6, and that it would result in a lifelong disability. They could not put a time frame on the other injuries.

¶ 6      On February 7, 2024, the reporting officer spoke separately with A.R., the victim's mother, and the defendant. A.R. said the defendant had moved in with her in November 2023. She worked at a daycare center and normally brought the victim to work with her. However, the defendant

was a seasonal worker and the victim occasionally stayed home with the defendant. On February 6, she left for work at 8:40 a.m., returned home at lunch to feed the victim, and went back to work at 1:30 p.m. At 6 p.m., the defendant called and said the victim had started throwing up about 3:30 p.m., was struggling to breath, and did not look well. The defendant sent her two videos showing the victim struggling to breathe. A.R. returned home and they took the victim to the hospital. She noticed that the victim had four round marks on his chest/stomach area and a large bruise that she had not seen the day before. The synopsis indicated that A.R.'s employer corroborated that she was at work on February 6. The defendant told the officer that the victim had fallen off a chair a few days prior and hit his head and that, the day prior to that, the victim had fallen in the bathtub. The defendant denied seeing any bruises on the victim's chest.

¶ 7     On February 14, 2024, the reporting officer interviewed the defendant at the police station and read the defendant his *Miranda* warnings. The defendant stated that he remembered the marks on the victim's chest. The victim started to vomit and the defendant noticed that the victim's stomach was hard. The defendant then pushed down on the victim's stomach several times. When doing so, he felt something "break loose." The defendant said no one else hit the victim on February 6 and confirmed that he was with the victim the whole day.

¶ 8     Finally, the synopsis indicated that a background search showed that the defendant had no criminal history in the United States other than an alien inadmissibility charge pending in Texas. An officer who completed a forensic extraction on the defendant's phone stated that the videos the defendant took of the victim struggling to breathe were likely deleted. After summarizing the facts stated in the synopsis, the State asserted that those facts and the defendant's alleged alien status provided clear and convincing evidence that, other than detention, there were no less restrictive means to ensure the victim's safety and the defendant's appearance in court.

¶ 9     The defendant argued that, if released, he could live in Carpentersville with his brother or with a friend who had no children. The defendant asserted that he had no criminal history in Mexico. He had the means to appear in court when necessary. The defendant told the court that his brother, an aunt, and an uncle, as well as the victim's mother and the mother's aunt, were present in court to vouch for the defendant's character. The defendant had watched his brother's children, ages 11, 8, and 6, and there was never a problem. Defense counsel noted that the defendant's brother stated that the defendant was not a violent person. The victim's mother told defense counsel that she wanted the defendant to return home and she had no concerns about the victim's safety or her own safety. The defendant further argued that the victim's mother had provided explanations for some of I.R.'s injuries—that he had fallen in the bathtub and off a chair, and that a stack of metal folding chairs had fallen on him. The chairs fell on his rib area and, after that, the victim had trouble laughing and occasionally struggled to breathe. Further, the victim's grandmother told the police she had never seen the defendant abuse the victim. A.R.'s coworker confirmed that, prior to February 6, she had seen a bump on the victim's head and that it had started bruising. The defendant argued that the State had not met its burden to show that he committed the alleged offense.

¶ 10    The defendant also argued that he was not a threat to the victim or the victim's mother. The victim was now in DCFS custody. The victim's mother wanted the defendant to come home, and she was not worried about her safety or the safety of the victim. Further, going forward, the victim's mother could take the victim to work with her so that the defendant would not have to watch the victim. The defendant reiterated that he had no criminal history, no history of violence, and no history of psychiatric issues. He did not carry weapons. The defendant argued that he could safely be released with an order to stay away from the victim and any other child under the

age of 18. He would not have to live with the victim or the victim's mother. The defendant was open to GPS monitoring.

¶ 11   Following argument, the trial court granted the State's petition. The trial court found that the synopsis provided clear and convincing evidence that the defendant committed the alleged detainable offenses. The trial court noted that the victim was in the sole care of the defendant at the time of the injuries and that the defendant gave inconsistent statements to the police.

¶ 12   The trial court then addressed whether the defendant posed a threat to the safety of any person or persons or the community. The trial court considered the factors set forth in section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2022)). The trial court noted that this was a serious offense, causing the victim permanent disability. The victim had numerous injuries all over his body, including a severed pancreas, a hemorrhage in his renal gland, a forehead bruise, petechia, bruising on his face, a bruise on his lower back, bruising on his buttock, extremely elevated liver enzymes, a subdural hemorrhage on the top of his head, a skull fracture on the back of his head, bruising on the top of his belly and bottom of his sternum, an abrasion on his fingers and toe. There was also damage to his large intestine, liver, and stomach. The trial court noted that the victim had to be transferred to other hospitals on two occasions.

¶ 13   The trial court acknowledged that the defendant did not have a history of violent behavior and did not possess weapons. Nonetheless, the trial court found that the defendant was a threat to the victim and to any child that he was around, including his brother's children. The trial court noted that the defendant changed his story over time and ultimately admitted that he pushed down hard on the victim's stomach. The victim was very young and vulnerable. The trial court also considered that the victim's mother A.R. was still in support of the defendant. The trial court worried that if the victim were returned to A.R., she would not protect the victim from the

defendant. The trial court questioned A.R.'s credibility, noting that she did not originally say anything to the police about a stack of chairs falling on the victim, that story emerged only after her initial interview with the police. The trial court concluded that the State proved that the defendant posed a threat to the safety or any person or persons or the community. Finally, based on the dangerousness factors and the seriousness of the injuries sustained by the victim, the trial court found that no conditions or combination of conditions could mitigate the threat posed by the defendant. The trial court entered a written order consistent with its oral ruling.

¶ 14    The defendant filed a timely form notice of appeal and subsequently filed a memorandum under Illinois Supreme Court Rule 604(h)(2) (eff. Dec. 7, 2023). The State filed a response in opposition to the defendant's appeal.

¶ 15                              II. ANALYSIS

¶ 16    In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 17    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 18    We review the court's decision to deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Specifically, we review under the manifest-weight-of-the-evidence standard the court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks. *Id.* A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented. *Id.* We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion also occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.* Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 19    On appeal, the defendant argues that the State failed to prove that he committed a detainable offense, as the injuries could have been accidental. He also argues that the State failed to prove he posed a threat to anyone and, even if he did, there were conditions of release that could have mitigated those threats.

¶ 20    As to whether he committed a detainable offense, the defendant argues that the trial court's determination was against the manifest weight of the evidence. The defendant notes that medical personnel opined that the victim's injuries were caused by blunt force trauma but did not opine that the injuries were caused by child abuse. The defendant denied abusing the victim and stated that the injuries were unintentional. A.R. gave the police explanations for the victim's injuries and this was corroborated by A.R.'s coworker, who stated that she saw a bump and bruising on the victim's head prior to the incident at issue. Additionally, family members stated that the defendant was not a violent person and had never acted abusively.

¶ 21    To convict defendant of aggravated battery to a child, the State was required to prove that defendant, a person 18 years of age or older, knowingly caused great bodily harm or permanent disability to I.R., a child under the age of 13. 720 ILCS 5/12-3.05(b)(1) (West 2022). "Because of its nature, knowledge is ordinarily established by circumstantial evidence, rather than by direct proof." *People v. Rader*, 272 Ill. App. 3d 796, 803 (1995). "A defendant is presumed to intend the probable consequences of his acts, and great disparity in size and strength between the defendant and the victim, as well as the nature of the injuries, may be considered in this context." *Id.*

¶ 22    Here, the defendant does not dispute the age-related elements of the offense, or the injuries sustained by the victim, or that such injuries qualify as great bodily harm. The defendant's argument is that there was not clear and convincing evidence that he knowingly caused the injuries. We find the defendant's argument unpersuasive. While A.R. gave innocent explanations for some of the victim's injuries, such as falling in the bathtub or falling off a chair, the trial court noted that her story was inconsistent and evolving, as A.R. later added that a stack of metal chairs had fallen on the victim. The defendant also deleted videos that could have been relevant to the investigation. It was not unreasonable for the trial court to conclude that the explanations provided by the defendant and A.R. did not match up with the extent of the injuries suffered by the victim. The synopsis indicated that the victim had bruising on his butt, chest, neck, back and face, petechial around his eyes, two skull fractures, two broken ribs, a lacerated pancreas, and a subdural hematoma. Further, although the defendant admitted that he pushed down on the victim's abdomen to help him vomit, the extent of the injuries and the size disparity between the victim and the defendant provides circumstantial evidence that any injuries were knowingly caused. *Id.* Finally, the defendant notes that the medical experts opined that the victim's injuries were caused

by blunt force trauma and did not specifically use the words "child abuse." Again, based on the extent of the victim's injuries, it was not unreasonable for the trial court to conclude that there was clear and convincing evidence of child abuse caused by blunt force trauma. As such, we affirm the trial court's finding that the State provided sufficient proof that the defendant committed a detainable offense.

¶ 23　　The defendant next argues that the State failed to prove that he posed a threat to anyone. The defendant argues that the trial court overlooked that there was already a considerable measure of protection in place because the victim was in DCFS custody. The defendant argues that the trial court's reasoning, that the defendant could pose a threat if the victim was returned to A.R., was speculative and thus improper. Further, the State could update the court at any time regarding the victim's status and address the defendant's release conditions accordingly.

¶ 24　　In considering whether the defendant poses a real and present threat to the safety of any person, persons, or the community, the trial court may consider the following factors: (1) the nature and circumstances of any offense charged; (2) the history and characteristics of the defendant, including the defendant's psychological history; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim; (7) whether the defendant is known to possess or have access to any weapons; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or other form of supervised release from custody; and (9) any other factors, including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)). *Id.* § 110-6.1(g)(1)-(9).

¶ 25      The trial court's finding that the defendant posed a threat to any person or persons or the community was not against the manifest weight of the evidence. In making its determination, the trial court specifically addressed the relevant factors in section 110-6.1(g). See 725 ILCS 5/110-6.1(g) (West 2022). The trial court noted that I.R. would be permanently disabled, the defendant admitted pushing down hard on the victim's abdomen and feeling something break loose, the victim was young and vulnerable, and the defendant had an alien inadmissibility charge pending in Texas. The trial court found that the defendant was a threat to any child he would be around. The trial court also considered that the defendant did not have a criminal history and did not use weapons. Because the trial court complied with the requirements of the Code and made the necessary findings, we cannot say that the trial court's determination was unreasonable. It is not this court's role to reweigh the factors, so we decline to do so. *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 24 ("Nothing in the Code authorizes a reviewing court to reweigh the factors at play.").

¶ 26      The fact that the victim is currently in DCFS custody does not render the trial court's determination erroneous. The trial court's written findings in the pretrial detention order must be read in conjunction with its oral pronouncement. *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶¶ 15, 19. While the trial court's written order stated that the defendant was a threat to the victim, its oral pronouncement found that the defendant posed a real and present threat to the safety of any person or persons or the community. Accordingly, that the defendant does not have current access to the victim, does not mean that he is not a threat to any other person or the community. Thus, the trial court's determination that the State met its burden to prove dangerousness is not one where "the opposite conclusion is clearly apparent." *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 27    Finally, the defendant argues that the State failed to prove that no conditions of release could mitigate any threat. The defendant argues that he could live with a friend who has no children, abide by no contact orders, and be placed on GPS monitoring.

¶ 28    Upon review of the record, we conclude that the trial court's determination does not meet the requirements of section 6.1(h)(1) of the Code, which mandates a "written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific and articulable facts of the case." 725 ILCS 5/110-6.1(h)(1) (West 2022). Here, the trial court found that the State proved that no condition or combination of conditions could mitigate the threat posed by the defendant. However, in its oral and written ruling, the trial court cited only the reasons for its finding of dangerousness. There is no indication that the trial court considered less restrictive conditions or why less restrictive conditions could not mitigate the defendant's dangerousness. Accordingly, we remand the case for the trial court to reconsider its decision on this issue. If, on remand, the trial court determines that the defendant should continue to be detained, it should make written findings explaining why less restrictive conditions would not mitigate the threat the defendant poses. We express no opinion on whether or not alternatives to detention could mitigate the defendant's dangerousness.

¶ 29               III. CONCLUSION

¶ 30    For the reasons stated, we vacate the judgment of the circuit court of Kane County and remand the matter for consideration consistent with this order.

¶ 31    Vacated and remanded.